506 So.2d 7 (1987)
K-MART CORPORATION, Etc., Appellant,
v.
CHAIRS, INC.; C & S Chairs, Inc. and Bituminous Casualty Corporation, Appellees.
No. 85-1578.
District Court of Appeal of Florida, Fifth District.
March 5, 1987.
Rehearings Denied April 30, 1987.
*8 Francis J. Carroll, Jr., of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Daytona Beach, for appellant.
David D. Chafin, of Whittaker, Stump and Webster, P.A., Orlando, for appellees C & S Chairs, Inc. and Bituminous Cas. Corp.
Frederick J. Daniels, of Langston and Hess, P.A. Orlando, for appellees, Chairs, Inc. and Aetna Ins. Companies.
SHARP, Judge.
K-Mart Corporation appeals from a summary judgment denying it any recovery under its third party complaint. In a suit by a customer injured by a swing set purchased from a K-Mart store, K-Mart filed a third party complaint against C & S Chairs, Inc. ("C & S"), manufacturer of the swing, and Chairs, Inc. ("Chairs"), the distributor. We reverse in part and affirm in part.
K-Mart sold a porch swing set to Willis Stuhr in 1979. Stuhr assembled the swing set and was subsequently injured while swinging in it when it tipped over backwards. In 1980, Stuhr and his wife sued K-Mart, C & S and Chairs.
On the eve of trial, an expert witness scheduled to appear for C & S and Chairs, became ill. Stuhr agreed to dismiss claims against C & S and Chairs, without prejudice. The trial continued against K-Mart, and while the jury was deliberating C & S and Chairs settled with Stuhr for $20,000.00.
The jury returned a verdict against K-Mart for $115,000.00 for Stuhr and $6,000.00 for his wife, for loss of services. Its verdict form contained the following specific finding: that K-Mart sold a "swing with a defect which was a legal cause of damage to plaintiff, Willis Stuhr."[1] However, the jury found Stuhr was thirty percent negligent.
After reducing the $115,000.00 award by the $20,000.00 settlement, and by the thirty percent attributable to Stuhr's negligence, K-Mart paid the Stuhrs $64,700.00 plus costs. Thereafter K-Mart filed its complaint seeking indemnity, contribution, and *9 damages for breach of contract from C & S and Chairs. Upon motion by the third party defendants, the trial court granted summary judgment denying K-Mart any relief. K-Mart argues it is entitled to indemnification based on either a theory of common law indemnity or contractual indemnity, and to contribution pursuant to section 768.31, Florida Statutes (1981).

Indemnity
Appellant sought common-law indemnity against both C & S and Chairs. The right to indemnity may arise out of a contract or it may be based on liability imposed by law. Mims Crane Service, Inc. v. Insley Manufacturing Corporation, 226 So.2d 836 (Fla. 2d DCA), cert. denied, 234 So.2d 122 (Fla. 1969). While the parties to this appeal agree the right to common-law indemnity exists in Florida, they differ in their application of the controlling case law to this case. We think the trial court correctly decided that this case is governed by Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979), but erred in its application to the facts presented here.
Houdaille involved an indemnification claim between a manufacturer and the employer of an injured employee. The suit alleged that the employer was actively negligent in using improper and dangerous procedures with the manufacturer's product. The supreme court held there was no right to indemnification on the part of the manufacturer as against the employer absent a special relationship between the manufacturer and the employer which would make the manufacturer only "vicariously, constructively, derivatively, or technically liable" for the wrongful acts of the employer. Houdaille at 492. The court further noted a distinction between the facts in Houdaille, where indemnification would not lie, and the situation where a manufacturer became liable solely because a supplier supplied the manufacturer with a defective part. In the latter case, a manufacturer held liable for breach of implied warranty of fitness may have a right to indemnification against the supplier. Houdaille at 493-4, n. 3.[2]
K-Mart's sole act, as indicated by the verdict form, was to sell the defective swing set to Stuhr. The swing set was furnished to K-Mart by the distributor, Chairs, and the manufacturer, C & S. We analogize this situation to the fact pattern noted in Houdaille, where a manufacturer became liable solely because a defective part was supplied to it by a supplier. The mere selling of a defective product by a retailer does not constitute "fault" under Houdaille.[3] Rather, the retailer is "vicariously, constructively, derivatively or technically liable" in that instance.[4]
In addition to common-law indemnity, K-Mart sought contract right indemnity against Chairs, based on language in an *10 invoice comprising part of the sales documents. It provided:
Seller agrees to reimburse, indemnify, hold harmless and defend at its expense (if requested by K-Mart) the K-Mart Corporation and its subsidiary companies against any damage, loss, expense, claim, liability or penalty, including bodily injury, property damage, ... arising out of any use, possession, consumption or sale of said goods;
General terms such as those used in the invoice do not generally encompass an intent to indemnify for consequences of a wrongful act of the person being indemnified.[5] However, as discussed above, we do not think a retailer's strict liability for sale of a defective product or breach of implied warranty by a retailer who does not manufacture the product, constitutes "wrongful conduct" in this context. Therefore, K-Mart should not be barred from pursuing its indemnity rights against Chairs based on a contract theory.

Contribution
Section 768.31 abrogates the common-law rule that a release of one or more joint tortfeasors discharges all other joint tortfeasors. It further provides that a right of contribution by one joint tortfeasor exists where one has paid more than his pro rata share of the common liability.[6] However, when a joint tortfeasor obtains a release in good faith, he is discharged from all liability for contribution to any tortfeasor.[7]
The record herein discloses that the settlement between the Stuhrs and C & S and Chairs was arrived at while the jury was deliberating, and prior to the time the jury reached a verdict. K-Mart failed to allege that the settlement was not entered into in good faith. There is nothing to substantiate K-Mart's claim that good faith is even in issue. We think the trial judge was correct in entering summary judgment against K-Mart on its contribution claims.
The order of summary judgment is
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
UPCHURCH, C.J., and DAUKSCH, J., concur.
NOTES
[1] The verdict form read:

1. Did defendant, K-MART CORPORATION, sell the porch swing with a defect which was a legal cause of damage to plaintiff, WILLIS STUHR?
 YES X NO ____
The verdict form does not indicate K-Mart engaged in any other act. The above constitutes the sole inquiry into fault on the part of K-Mart.
[2] The jury was instructed on theories of strict liability and implied warranty, however, the verdict does not indicate upon which theory the jury found K-Mart liable. Therefore, one cannot successfully argue that the verdict was based on one theory or the other. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1977).
[3] A retailer does not have a duty to inspect for latent defects. Carter v. Hector Supply Co., 128 So.2d 390 (Fla. 1961).
[4] See, "Fault and Equity: Implied Indemnity After Houdaille," 34 U. Miami L.R. 727, 746, n. 90:

It follows that a retailer who would be found at fault under a theory of negligence per se in strict liability and implied warranty would still have a right to indemnity (from a manufacturer) if he could allege he was only derivatively or technically liable  that is, that his fault was really no fault because all he did was sell the product as agent for the manufacturer.
and "Tort Indemnity in Florida," 8 Fla.St.U.L. Rev. 383, 400 (1980):
Where, however, the party claiming common law indemnity has not created the dangerous condition but is nevertheless subject to strict liability of a vicarious nature, he should be allowed common law indemnity. For example, the strict liability imposed upon an innocent retailer for selling a defective product manufactured by another is considered as "technical" or "constructive" liability under the holding in Houdaille. The retailer held strictly liable to his customer in these circumstances will be entitled to recover common law indemnity from the manufacturer of the defective product.
[5] University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973).
[6] § 768.31(2)(b), Fla. Stat. (1981).
[7] § 768.31(5), Fla. Stat. (1981).